2009 1368 Y.F. Holdings v. United States Good morning, may it please the court. This case is about the loss of effective patent life that results from the many years it takes the FDA to review and approve a new drug. In particular, Congress gave qualified patent owners the right to obtain a patent term extension equal to half the period of time spent during the testing of the new drug and during the entire period of time that the FDA is engaged in review of the application. Why is the FDA's interpretation unreasonable? The FDA's interpretation here is unreasonable for a number of reasons. The decision that the FDA rendered here is that an application as part of this phased review program is not initially submitted until it's complete. And what the FDA actually requires is that the application not only all of the component parts, the technical sections of the application actually have been submitted to the FDA. It requires that those sections actually have been reviewed. The FDA then submit what it refers to as a complete letter. Well, it doesn't seem to me that it requires them to have all been reviewed. It just simply requires a complete application with all the component parts. And you, when choosing the phased out process, simply don't have one of those until you file the NADA, right? Do you refer to that as NADA? I don't know. I mean, you all phoneticize all these acronyms. I'll try not to. I'll try to avoid that. What's the convention? So we can follow the convention. Why don't we refer to it? What I would refer to it as a traditional application, an administrative application. No, but in particular, the form, the NADA. The thing that gets submitted. The thing that gets submitted I would refer to simply as an application, Your Honor. Let's refer to it as an NADA. That's fine for present purposes. But I want to get back to answering what I think is obviously the critical question here in the case. And we have submitted to the court that there are two alternative interpretations of the statute, in addition to the one the FDA has adopted. Under the second of those interpretations, we submit that an application is certainly initially submitted by the point in time in which each of the technical sections, all of the technical sections, have been submitted to the FDA for review. What I want to know is what exactly is added in the NADA? Because unfortunately, you didn't give us the one in the appendix, and I would have loved to have seen it. Is it nothing more than a, here is my name, here is my birthdate, see forms, blank, blank, blank, blank, and blank? Or is there more to it? That's what I'm trying to appreciate. What is included in what they refer to here is the administrative NADA. It's not an NADA. It's an administrative NADA. And all it includes, it's roughly 90 pages as compared to the 28 linear feet of information that was submitted in the substantive application. What do the 90 pages consist of in general? In general, they have some summary language about what's in the application, a table of to check, and with some certifications and a signature. In this case, I think the form is two pages long. But the bulk of what it includes are the labels, which have previously been submitted for review earlier in the stages, part of the earlier review. Reviews, yeah. That thing with all the boxes. Yes. Are those certifications information that they would otherwise have prior to receiving this application? Your Honor, there is no information that requires substantive review that they don't receive by the time that they receive the final technical exception, with one exception. And that one exception is that the way that FDA review works in any context, whether it's part of this phased review process or whether it's part of the traditional review process, is there is a back and forth. So you submit all of what's required, all the information that's required in 360BB. And that is what the statute refers to. Maybe I want to make sure I get to the heart of this. So I understand they will have all of the technical information by the time the last technical section is submitted. Right. But what about the other stuff in the NADA? Is there some reason that the FDA does not actually have what it needs to determine whether or not to approve an application until they have the NADA form with all the little boxes and the 90 pages of stuff? What I can tell you is it's, first of all, in the guidance documents. See, because the problem is, since you're not convincing me that they don't need it in that 90 pages, I can't possibly conclude the FDA was unreasonable to say they did. And so this is your burden right now. Fair enough. Let me tell you what the FDA said they needed here. What the FDA said they needed was- You're talking about the statutory requirements or the regulatory requirements of what things must go into an application? Obviously, the FDA has to defend the decision that the FDA rendered. And the question is the reasonableness of that decision. The decision that the FDA rendered here was a decision that you need to submit a complete application including all of the technical sections and the complete letters. And if there is one thing that is absolutely foreclosed by the statute, it's that. The FDA cannot say, in order to have an application, in order for your period of time for the review phase to begin running, you need to actually have a letter back from the FDA saying we've reviewed the technical sections and we've concluded that they meet the statutory requirements. And that was the basis of the FDA's decision. And if you look at pages 34 and 35 of the FDA's brief, this is where they identify what they say was missing at the point in time that the final technical section was submitted. This is what else they say Wyeth had failed to submit by that point in time. The first thing they cite to is the opinion of the district court, which included no fact-finding. It was an ad law appeal. And all that the district court said was by January of 1998, Wyeth had submitted all the necessary technical information. They then cite to JA 34, which is Wyeth's complaint in the case. And the paragraph they cite to is a paragraph that says you need the complete letter. And the date the complete letter was submitted. Where is it that they say you need the complete letter? The JA 148? Because what FDA says, as I understood them to say on 34 and 35, is that until the NADA is submitted, FDA may not have all of the information required by statute and regulation. And they give poor example. And they go through a whole bunch of examples of things that may not actually be in there. And the only interpretation I really understand them to be making is that the word initially submitted, they interpret that as when the administrative NADA is filed. I don't really see their interpretation being what you're casting it as right now. The administrative NADA is an invention only for purposes of this one category of applications. In the ordinary course, you have something called an application or an NADA. You could have filed that at any point here in this process and triggered the change in the timeline, right? That's actually not accurate, Your Honor. Under the FDA's guidelines, and this is at JA 67, in their 1995 guidelines, they say you can transfer this and you can make it, if you've been proceeding by phased review, you can change that and you can make it, you can submit an NADA at any point in time you want. But if you want to incorporate the technical sections that you've already submitted, you have to respond to all of the outstanding requests for information by the FDA before the time that you do that. And the way the FDA works, and Congress understood that the way the process works here, is that you submit the technical information to the FDA. It's at that point in time, that's everything, that's anything that is required by Section 360BB. That is what is referred to in the statute. It says when you have an application under 360BB, that's required. And by the time the final technical section is submitted, you have submitted everything that is required by 360BB. But Congress understood that what happens is that there's a back and forth. That's the way FDA review works in the traditional context, and that's the way it works in the phased review. And the FDA calls up and says, or sends you a letter and says, we've reviewed what you have here, and we'd really like to see some more data on this issue. And you get back to them with that data. But that doesn't change the date in which an application is initially submitted. Let me give you an example from the traditional NADA context, which is parallel to the way it should have worked here. We cite in our reply brief to an example of a case in which an applicant submitted their traditional application. The FDA issued a major deficiency letter. They said, we need another study. The applicant went and spent two years doing the additional study, submitted the additional study to the FDA. And the FDA, at that point in time, then concluded that the application met the statutory requirements and eventually approved the application. But the FDA, for purposes of determining when the application was initially submitted, went back before it even issued the deficiency letter and said, when you submitted what was required under 360 BB, that's when you would trigger this period of an application being initially submitted. And we don't care that it took you another two years to respond to a request for information that we had. We don't care that we had to review it. What mattered is that we had started review. Let me give another example, which I think is even closer here. And the FDA has never given any explanation for how they can possibly treat these situations differently. In the context of human drugs, there's something called fast track review. And as with phased review, with these human drugs, what you can do when certain requirements are satisfied, is you can submit the modules of information, in essence the technical sections, seriatim, and that the FDA reviews them on a rolling basis. And what the FDA has concluded, in the context of human drugs and fast track review, is as soon as you've submitted that final module, at that point in time, your application is initially submitted, and you get the benefit of review. And just to drive home the ultimate absurdity of where we've ended up here, and really the inconsistency with congressional purpose here, the purpose that Congress had here was to ensure that patent owners were not disadvantaged by the amount of time that was taken during the FDA review, and that they had a restoration of that period of time. Under the approach that the FDA has applied here, we ended up with 2,841 days of the review phase, and 16 days, I'm sorry, 2,841 days of the testing phase, and 16 days of the review phase. Even though the FDA spent two and a half years... The FDA's amazingly efficient, aren't they? Absolutely. They review these things and get through them. But that is the point, Your Honor, is that the FDA was reviewing the 28 linear feet of information for two and a half years. The last technical section submitted, my understanding, in three parts. Was that due to your client's choice, or was that required with the FDA? My understanding is that there was a discussion and agreement with the FDA. This is outside the record in the case, and Your Honor, for that reason, we've suggested that proper discussion... Well, it's in the... The last module, I guess, is reflected in the appendix, right? I mean, I tracked it. Yes, Your Honor. You could determine that from the regulatory chronology as well. Okay. And that was in June of 1997? Correct, Your Honor. And I'm not sure if you answered, whose choice was that, or was that required by the FDA, your client's choice? You know, Your Honor, I don't know the answer to that, because that is outside the record. I believe that what happened was that not all the information... Not all the studies had been completed at that point in time, and there was an agreement to do it in modules in order to provide for the efficiency. But the point that I really want to drive home here, though, is that Congress... The decision that needs to be reviewed is the decision that the FDA rendered. You're in the question just of whether that's reasonable. The FDA concluded what is missing here is the complete letters. And as I was going through that portion of the FDA's brief, it responds almost exclusively... It points almost exclusively, directly or indirectly, to complete letters, to the chronology, the regulatory chronology, which just shows this back and forth, which happens in every context. And then one other example involving a protocol involving ruminating calves, where the FDA is simply mistaken about that, because that actually wasn't part of the process for approval of this particular drug. This drug was actually never approved for use in veal, which is what the pre-ruminating calf protocol is about. So the only thing that they're pointing to, in the end, is the regular back and forth that takes place, and the complete letters. And with respect... I'm sorry, Your Honor. No, no, go ahead. And with respect to the complete letters... I've puzzled over the pre-ruminating calves. I'm happy to come back to that in a second, Your Honor. But the point that's important is the requirement that there be a complete letter. The FDA's requirement that the application ultimately be, in some sense, complete before they will deem it to be an application for these purposes is fundamentally at odds with what Congress decided here. What everyone agrees is the definitive legislative history. Congress explained that we decided not to use the word filed in the statute, and instead we used the word initially submitted. Because the FDA, in the past, had understood the word filed to mean complete, and that you had all the information in front of you. And Congress said, that's not what we want to do. It's as soon as it's been initially submitted. Yet what the FDA has done here... The reason behind this, as I understand it, was because of the back and forth that often goes on in the request for additional information. But what if we instead were looking at the word complete the way I think I understand it, in the human context of the human drug trials, to mean when you all believe you have at least initially submitted everything that would satisfy the requirements under the statute, and when the FDA is on notice that you've done that. And that's the critical difference, as I understand it, between the human testing and the animal testing. Well, first of all, Your Honor, I know the government says in their brief that there is some document that is submitted to the FDA that says, in the human context, it says we're now complete. But what I can tell you is that if one goes and looks at the actual FDA decisions in this, for example, the Fouzion decision, which is at 71 FR, or Federal Register, 54996, there's no reference to this, to a complete letter of any type. What the FDA said is it says a review of FDA records reveals that the final module of the marketing application was submitted on September 16, 2002, which is considered to be the date the NID is initially submitted, the initially submitted date. I mean, that's all they said. That was the basis for their justification. And all we're saying here is the same rule, at a minimum, ought to apply in this context. Why don't we hear from the government now? We've questioned you heavily, so we'll save you for a little time. Thank you, Your Honor. Sure. Thank you, Your Honor. May it please the Court, I'm Howard Scherr, and I represent the Federal Defendant's Appellees in this case. The question is really central here is when is the application filed? And an application is a formal document which first informs and puts it, as Judge Morris says, puts FDA on notice. When it's initially submitted. When it's submitted. Initially submitted. Initially submitted. When it puts FDA on notice that the applicant believes all the testing it needs to have done is complete and it's ready to submit or has submitted its complete documentation. Why was it the FDA put on notice when that final part of the technical section was submitted? Well, for two reasons. One, there was more testing data going on in reality, more give and take, and some of those were in responses to incomplete letters. And the record at 141, 149 shows this chronology. And the other is, even then, FDA operates, as Wyeth knows, with separate submissions of the particular data. And FDA, and I have to emphasize this to the Court, FDA calls all these submissions of technical sections data. It's no different from the pre-meetings they often have in the traditional setting when they meet with an applicant and discuss things and maybe getting data. That is not an application. As far as FDA is concerned, all the separate data is being submitted to various sections of the Center for Veterinary Medicine. And you can see this in the 1995 guidance that's in the record. And throughout that point, the expertise is being exercised by the separate sections to look at the separate pieces of data that are being submitted by Wyeth. No one central person, and again, the 1995 guidance emphasizes this at page 52, no one person knows that all the data is there until Wyeth tells us that it's there. And it does so through the submission of an application. If Wyeth had actually sent a letter along with its last technical section indicating, this completes our application, we have now submitted all component parts according to 360BB, then wouldn't this be exactly like the human trials? Yes, and at that point, or it could have been, and I will answer yes first to say, had they done so and said switch to the, what would have been more like a traditional NADA that the guidance, the 1995 guidance talks about, had they done that, FDA would have then taken a look at the material and rendered a sort of preliminary look. Is this complete enough for review? And under the circumstances discussed in the 1995 guidance, had there not been the appropriate responses to prior give and take over the separate sections, FDA would have no doubt, based on the 1995 guidance, issued a deficiency letter and said we can't accept this. You have to go back and address many of the things we've previously discussed and then come back to us. But isn't it, it's already initially submitted prior to that time. That would have been an application that I believe would have not been initially submitted because it would have been deficient or non-approvable at that point. Yes, but initially submitted doesn't require approval. Initially submitted is when you phrased it. You came up and said Judge Moore was right. Initially submitted is when the FDA is on notice that the applicant believes he's submitted everything. Well, that is the first possible time that FDA can be on notice that an application has been filed, whether it suffices for approval purposes and requires a resetting of the clock. That's, I agree, that might be a different question. Let me make sure I understand. I'm sorry, were you finished with that? Yes, Your Honor. Very well. Let me make sure I understand the role of the back and forth that we've been referring to. Let's take the traditional submission. The applicant submits what the applicant believes to be a complete application. The FDA accepts it and then has a few questions before it's prepared to approve. Now, the questions, if I understood what I thought I understood about the party's position, those questions, the back and forth, do not keep the earliest, the first submission from being an initial submission, right? Yes and no. It doesn't if they're minor, according to what we've argued, and the approval can occur within the 180-day period that the statute sets out. But they may be minor, but they would still be significant enough to prevent approval without getting a satisfactory answer, correct? I mean, otherwise, why send them? Let me answer it this way. If FDA believes that the answers within the 180-day period or can't be answered within the 180-day approval period, it will simply issue a deficiency letter and perhaps reset the clock for when the initial submission occurs. Assuming the FDA concludes that this application has the four things that we need from the applicant here, those four things can probably be done fairly quickly, but we can't approve without them. The submission that was made prior to the FDA's request for those four clarifying points is still an initial submission within the meaning of the statute, correct? Yes, and if it says it's an application seeking approval of particular uses or whatever of the drug. So, for example, here, and you take me into the pre-ruminating calves issue. As far as FDA was concerned, and again, we're sort of off the record here, but given the submission, FDA could have assumed, and I think properly so, that Wyeth was seeking approval for use of this drug with pre-ruminating calves, and it wasn't until its application came in saying we're only seeking approval for dairy cattle and beef cattle and not pre-ruminating calves that we had an application, which we could then look at to approve or not approve. Now, when you say when the application came in, do you mean that was in the administrative NADA? The administrative NADA? Yes, on January 13th when... Okay, and that particular scope request of approval was in no previous document that had been submitted to the FDA? Yes. Okay. Yes. As far as the record is concerned. That would be something that would be new in the administrative NADA that wasn't part of any previous submission? Any individual technology submission or otherwise. Well, I think that's correct. We simply don't have that as spelled out completely, but that's right. Again, though, I think this still gets away from the fact that there is some formalism here that is necessary. FDA isn't on notice that an application has been initially submitted until the applicant tells it so, up until that point. And this is all through the record. FDA calls all of these separate submissions when you have phase review data, submission of the data. The data goes to one expert section in the Center for Veterinary Medicine, some other data, one of the other technical sections goes to another. They go to all the expertise sections. FDA made clear in its guidance in 95, no one person is reviewing until the point at which an application is initially submitted. And in that regard, what it tells the applicant is that you submit your final administrative NADA to a particular person, the division director responsible for the evaluation of target animal safety, technical section. That's the person who is authorized to approve or not approve drugs. That's Joint Appendix 213 as one example of where it shows up. But within the 95 guidance, it's very clear that all of these technical sections are going to various parts of FDA and not to one person who knows that an application has been filed. Anything else? Is there anything in 360BB that is not present until that administrative NADA is submitted? Well, the administrative NADA includes, and this is at the Joint Appendix 159 and 213, it refers to the regulations at 514.1 as well. It's a cover letter, a table of contents, a summary, a copy of each complete letter, a complete facsimile labeling, the Freedom of Information Act summary, a complete identity of the applicant and what the applicant's commitments are to the particular product and so forth. And it is at that point that FDA is aware that an application has been initially submitted for some use of the particular drug product. Maybe you said it and I missed it. But again, going back to the colloquy we had before as to whether the administrative NADA is the first time that the specific request for a particular use is made, I don't think you mentioned the designation of the specific requested use authorization.  I would take that's in the cover letter and or in the summary, et cetera, the table of contents, an indication. So that would be contained somewhere in that application what uses the applicant is seeking approval of. And that doesn't come until... I'm talking about a rule that has much broader application. But nonetheless, you say that that's significant in this case because the pre-ruminating calves study was, in a sense, up in the air until FDA learned that pre-ruminating calves were not part of the requested use. Again, I'm going beyond the record. But the only reason I can imagine and FDA could imagine the submission of any documentation regarding pre-ruminating calves is that why I thought it was an important part of what they were applying to get approval of. At some point, the application, I believe, tells... the application tells FDA what it is that is being sought, the approval that's being sought. I think the facts of the record and the district court accepted this are clear. And in fact, there was a testing phase going on all through this process. And the statute really does divide between a testing phase and an approval phase. And the district court points out that there was a testing data being submitted all the way into January of 98. So does that mean in a regular, not a phase review, but in a regular review, that if the FDA took an initial submission, looked at it and said, further testing is necessary, that the FDA would not then treat this as an initial submission and the time wouldn't click over to review time yet? If the FDA determined additional testing was necessary, would they therefore sort of toll and we'd continue to be in the testing part of the statute, giving the half days instead of full days? No. It would be initially submitted and depending, again, as I tried to answer earlier, depending on whether the kind of information FDA is seeking can be obtained and reviewed within the 180 days, it will consider the initial submission to be the date when the application came in. Even if additional testing is necessary? Even if additional information, which is based on the testing that has been done, is necessary. But not necessarily, I thought you said. I mean, I thought your position was if the testing was really pretty fundamental and even if it could be done on a rush basis in 180 days, that might still be sufficiently fundamental to keep the application from being initially submitted. No, I think FDA, as I understand our back and forth on this, has been that if it feels that the responses can be done within the 180-day period and an approval therefore possible within the statutory 180-day period, the initial submission is the date the application was initially submitted. The other material that comes in does not change that date. I'm just a little bit confused. Your reliance to me seems so heavy on whether or not approval can be achieved within 180 days. It just seems like an awfully weird way to interpret the words initially submitted. I just don't see anything in the legislative history or in the statute that would suggest to me that that is somehow an appropriate way to interpret that language. So, I mean, if you were to parse it on testing or something that I could say seems related to the statutory language in the legislative history, then it would make a little more sense to me. But justify, if you will, where this 180-day approval becomes the touchstone for whether an application is initially submitted. Well, the statute refers to initially submitted. So, as FDA has understood that and from the legislative history, if the application it gets is complete enough to begin the approval stage, then initially submitted is on the date when there is that initial submission. That the give and take of information after that would not change the date. We're talking about the traditional application. Traditional. Where this has... Correct. And this is the only thing Congress knew it was talking about at the time. Understood. Congress didn't have a phased review concept in animal drugs when it passed the animal drug statute. I'm using the 180 days only to say that at some point FDA has tried to make some cut, and we pointed this out, between minor and major amendments that may or may not reset the clock depending on what FDA views as how serious it was in terms of the complete enough concept. Because you wouldn't want to let people take total advantage of this and say, well, it's initially submitted even though it's woefully deficient in lots and lots of obvious ways. Such as the submission of the first technical section. Right. You wouldn't. So, I mean, it makes some sense, but it just seems a little counterintuitive to me to interpret initially submitted in terms of whether or not the FDA can approve it in 180 days. Well, because we have a statutory obligation, I think FDA tries to focus, and I know I'm repeating myself a little here, on minor amendments that won't change the concept of initial submission and maybe more major changes that might affect it, and the major changes might affect its ability to approve it. Isn't one of the technical sections that must be submitted a labeling section? Yes. Okay. Wouldn't labeling necessarily have to say what the intended scope of use was? Well, it would. And, of course, there were some incomplete letters here on the labeling all the way up, and I think until the final labeling was submitted, there were some deficiencies in the labeling throughout. But, nevertheless, FDA wouldn't know whether the submission of data regarding pre-ruminating calves was intended to add to the approved uses when the application was initially submitted. Okay. So, wait. So, you're, but, see, I'm trying to appreciate, is really the administrative NADA the first time where you have a scope of use submission, or is the scope of use satisfied in the context of satisfying the labeling portion of the technical review? Well, as I understand it, it is when the application comes in, is initially submitted as a whole. The administrative NADA is submitted. It's when FDA knows what approved uses the applicant is seeking. You don't know that when he submits the labeling? That's what I don't understand. Because up until that point, we're at different, we are at a point where data has been submitted to several different sections. No one individual has looked at the whole material in order to make a determination whether everything is actually complete as a whole until the administrative NADA is submitted. And at that point, it is submitted, as I said, to a single individual who then makes that preliminary determination of whether the application is complete enough to begin the review process. Prior to that, no one individual knows whether all the data is there. No one individual knows what the approved uses that the applicant seeks until the application itself is filed. That's my understanding. But going back, the fact of the matter is, at any time, and this I think is critical, at any time, had Wyeth thought it wanted to immediately submit its application and submit that which it understood to be an application, it could have submitted right after its last technical section a traditional NADA, incorporating all the information that it had previously submitted and gotten the benefit of a period of review by FDA that started earlier. It knew that, but it didn't. It knew that it had other documentation to submit, other data, and it wanted to, in a sense, play it safe. It wanted to have the give and take with FDA in order to make sure that at the time at which it submitted its application, it had its ducks in a row and therefore was on the way to a quick approval, which Wyeth at page 47 of its brief, I think, says this is important to us. Approvals earlier than later are critical in order to make sure we get to the market sooner than someone else. Let me be sure I understand it with respect to your Chevron argument exactly what it is we'd be deferring to. If I understand it correctly, the regulation 60.22F really just uses what looks to be pretty much the statutory language. What you're asking us, if I understand correctly, to defer to is the three previous FDA decisions, a consistent line of FDA decisions in particular cases. Is that correct? Yes, I think that's right. I think the regulation and this consistent line of interpretation within the animal drug application process is what we're seeking. The regulations, just to make sure I understand your response, the regulation itself doesn't really get you where you need to go, correct, without the interpretation of the regulation in the three rulings that FDA has had in similar cases? I think that's right, and that's what we point out. I think we try to make that point in our brief that to the extent that we say application complete enough for review, we mean a particular concept, and that concept is reflected, for example, in those three decisions. I know I'm over my time, but our brief points out why we think the Fusion decision and the Fast-Track program that is applicable to human drugs is not inconsistent with what we do here. Thank you, Mr. Scherr. Let's see, Mr. Moss, I think you reserved only two minutes, but Mr. Scherr took, well, we extended Mr. Scherr's time by a couple of minutes, so why don't we give you four minutes if you need it. Thank you, Your Honor. With the question of the scope of the use, not only would the labels, as Judge Moore suggested, indicate what the scope of the use was, but in addition, it just makes common sense that one can't actually determine whether a drug is safe or effective unless one knows what the proposed use is of the drug. Here, there was a protocol. It wasn't even a study, it was a protocol that was submitted late in the process for a different use in which Wyeth was seeking at that time to attain a separate and further approval of the drug for that use, but the approval that issued for this drug… This is the pre-ruminating caps again? I'm back to pre-ruminating caps, yes, Your Honor. So I think that the scope… The image that that evokes. Yes, I know. Immanuel calf. Yes, Your Honor. So I think the scope of the use is clearly before the FDA, well before the administrative NADA is submitted. And where exactly would it be before the FDA? At a minimum in the labeling where it would indicate what the approved uses were as well as in the studies that are determining whether the product is safe or effective for a particular use. Well, but submitting a study of whether something is safe or effective for a particular use doesn't put the FDA on notice of the scope of approval that you're seeking necessarily. It just is an example. We're obviously well beyond the administrative record in this case, but I think that it's fair to say that with the back-and-forth and the exchange of discussions that take place over the years and years of time with the FDA, that there's no reason to believe that the FDA simply woke up on January 13, 1998, and said, now we understand how you're proposing to use it. They're discussing it back and forth. There are studies that are being done. There's the labels, as you indicated. So I think that the notion, I mean, it's certainly not the basis at all of the FDA's decision here. So just out of general policy curiosity, I can appreciate what the benefits of phased review are over traditional review. And certainly the court would be well aware of the benefits that would approve for extended patent term on the flip side. So if you had to go back and do it over again, which way would you go? I don't know the answer to that question, Your Honor. It depends on whether you win this case, I guess. And we also win this case, Your Honor, because the ultimate goal here is to figure out what the purpose of Congress was here. And the FDA has referred to this 180-day clock and resetting the clock. That has nothing whatsoever to do with this issue initially submitted. What that's about is the 180 days under the statute and under their own practice that the FDA has from the time an application is filed in order for it to make a decision with respect to that application. Congress consciously didn't use the word filed here to avoid just that situation and use the words initially submitted instead. And what the FDA has done here is it said the review phase does not begin until review is complete, until we've gone through all the subs of information and determined that it's completed. We've given you letters telling you it's complete, and then you've resubmitted to us those letters telling us that you meet statutory requirements. And, Judge Moore, you asked counsel for the government about whether everything in 360BB is submitted by the time the final technical section is submitted. And the answer to that is yes. And the government has never in this case or otherwise pointed to anything in Section 360BB of the statute that is not submitted by the time that final technical section is completed. And what the government has done is they've introduced a new requirement. And this is the basis for their decision, is you need the complete letters. And let me just give you one example in part that I think drives home why that can't stand. If the United States in the context of traditional review, not in the phased review, said, you know what, it really would be more efficient for us if someone raised their hand and said, we're really done, or they said to us, we want you to submit to us complete letters. Submit all the data to us. We're going to review all the data. And then we're going to issue complete letters. And you can't actually submit an application. We're not going to let you submit an application until you submit all those complete letters to us. And that's the day we're going to say you have an application. And then it's going to be the 16 days or something like that that we're going to actually review it. The FDA statistics for efficiency would be wonderful under those circumstances, but that's not what the statute intended. It's not what applies with respect to human drugs. It's not what applies in traditional review. And it's not what should apply here as well. Let me ask you, this isn't obviously the way things work, but I just wanted to understand the significance of the perfunctory period of FDA activity after the submission of the administrative NAD. Suppose that the FDA arranged to have not just a single person getting this file and presumably doing something that doesn't involve a significant amount of scientific work, but supposedly did have several months worth of further scientific inquiry, a sort of double check on the scientists in each of the various sections to make sure that there wasn't some problem that creeps in from the lack of synergy between the various sections. And this would typically take, say, four, five, six months and might provoke questions back and forth from this one central office. Would your view of the process be different? Not in the slightest, Your Honor, because the critical question is when the elements of information that are required under section 360BB were submitted to the FDA. And we concede that in this context, as is always the case, whether it's phased review or traditional review, there is a back and forth and there is a discussion with the FDA where additional data can be requested. And that's the reason Congress used the word initially submitted, because there is that back and forth. But I think your question does point out, though, a further flaw in the government's position. Because the government explained that what's really significant about this administrative NADA is that that's the first time that a single person at the FDA sits down and looks at everything and makes sure that they are the right synergies and their consistencies. But that has nothing to do with the question of when the applicant has actually initially submitted an application to the FDA. The FDA could have months earlier said, we're going to take that information and we're going to assign one person to look at it. That's just what the FDA is doing internally. It has nothing to do with what the phrase initially submitted means. Thank you. Thank you. Thank you. We thank both counsel and the cases submitted.